# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2018-0145, In the Matter of Jessika Greene and Curtis Billups, the court on April 3, 2019, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, Curtis Billups (father), appeals an order of the Circuit Court (Boyle, J.) approving the recommendation of the Judicial Referee (Cyr, J.) denying his petition to enforce and modify a divorce decree from Virginia. We affirm.

The following facts were found by the trial court or are supported by the record. The parties were divorced in June 2014 by final decree of a Virginia court. The decree ordered the father to pay child support and stated that "legal custody . . . will be joint," "primary physical custody . . . will be with [Jessika Greene (mother)]," and that the father had a "right to reasonable visitation as the parties may mutually agree upon."[1] Initially, the father made several child support payments into a bank account opened for that purpose, but stopped making payments shortly thereafter. In July 2015, the father was convicted for attempting to entice a child to have sex, a felony level offense. He is incarcerated in the federal prison system and is scheduled for release in March 2026. The mother learned of his conviction when, after not hearing from him for a considerable period, she searched for information about him on the internet.

In early 2017, the mother and the child moved to New Hampshire. In May 2017, the mother closed the bank account that the father had used to pay child support. In August 2017, the father filed a petition seeking to register the Virginia divorce decree in New Hampshire, stating that he "wants to establish communication and potentially visitation between the minor and his family." Later that month, he filed another petition requesting that the court register the decree and order the mother to accept child support. He also sought "to explore the possibility of having written and telephonic communication with his [child] and possibly visitation if circumstances allow visits to take place." The mother agreed that the decree should be registered in New Hampshire, objected

---

[1] The divorce decree explicitly incorporates by reference a "Final and Permanent Separation, Support, Custody and Property Settlement Agreement" dated May 12, 2014. However, because the trial court did not reference this agreement, and neither party makes arguments about the document or provided it to this court on appeal, our interpretation of the parties' rights and responsibilities is based solely on the final divorce decree and the trial court's order.

to the father's other requests, and requested a hearing.  At some point, the paternal grandparents motioned to intervene and petitioned for grandparent visitation rights.

The trial court registered the Virginia decree and, in October 2017, held a hearing on the paternal grandparents' motion to intervene and the father's motion to enforce and modify the decree.  Following the hearing, the trial court denied the grandparents' requests.  It also ruled that the mother should set up a bank account so that the father could pay child support.  However, it denied the father's petition to enforce and modify the Virginia decree, reasoning that it would not be in the best interest of the child for the father to be re-introduced into her life at that time.  The trial court denied the father's motion to reconsider, and this appeal followed.

On appeal, the father argues that the trial court order denies him the ability "to have written and telephonic contact with his [child] resulting in a de facto termination of his parenting rights in violation of his constitutional rights protected under the Fourteenth Amendment to the U.S. Constitution and Part I, Article 2 of the New Hampshire Constitution."  He asserts that the trial court erred because it did not apply the standards and procedures set forth in RSA chapter 170-C (2014) including the right to appointed counsel, the requirement of a guardian ad litem, and a higher burden of proof.  He also contends that the trial court erred when it concluded that it was not in the child's best interest to have contact with him.  See RSA 461-A:11, II (2018) (allowing the court to modify a permanent order concerning parental rights and responsibilities based on its determination of what would be in the child's "best interest").

When reviewing a trial court's decision on parenting rights and responsibilities, our role is limited to determining whether it clearly appears that the trial court engaged in an unsustainable exercise of discretion.  In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011).  We consider only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made.  Id.  To the extent an appealing party argues that the trial court committed an error involving questions of law, we review such issues de novo.  Id.

Central to all of the father's appellate arguments is his contention that the trial court order — by denying his petition to enforce and modify the Virginia decree — forbids him from communicating with his child.  He asserts that the inability to communicate effectuates a de facto termination of his parental rights.  Although the trial court order does not explicitly state that the father is forbidden from communicating with his child, because the trial court denied the father's motion to enforce and modify — which included his request for communication — we interpret the trial court order as barring the father

2

from initiating written or telephonic communication with the child.  See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (interpretation of a trial court order presents a question of law for this court).

The father contends that the trial court erred when it concluded that it was not in the child's best interests to have contact with the father.  We disagree.  Based upon the evidence before it, the trial court could have reasonably determined that receiving communication from the father — which would likely involve disclosure of his incarceration and the offense of which he was convicted — was not in the child's best interest because that information could negatively impact the child's emotional well-being and relationship with family members.  Accordingly, because the record establishes an objective basis to sustain the trial court's discretionary judgment, we conclude that the father has not met his burden to prove that the trial court's "best interests" determination is not sustainable.  See Kurowski, 161 N.H. at 585.

Nor are we persuaded by the father's argument that a present inability to communicate with the child effectuates a de facto termination of his parental rights.  The trial court order does not permanently terminate any of the father's parental rights.  Under the Virginia divorce decree, which the trial court did not modify, the father retains joint legal custody of the child.  Under Virginia law, "'[j]oint custody' means . . . joint legal custody where both parents retain joint responsibility for the care and control of the child and joint authority to make decisions concerning the child even though the child's primary residence may be with only one parent."  Va. Code Ann. § 20-124.1 (West, Westlaw through end of Reg. Sess. 2018 and 2018 Sp. Sess.).

Additionally, the father retains the right to petition the court for future modification of the parenting plan.  See RSA 461-A:11.  Thus, the trial court order lacks permanency, which is the hallmark of a true termination of parental rights.  Cf. In re C.M., 163 N.H. 768, 774-75 (2012) (reasoning that an abuse and neglect proceeding is distinguishable from a proceeding to terminate parental rights because the former order "is not permanent and is subject to review," whereas the purpose of the latter is to "permanently sever the parent-child relationship").  Because the trial court order does not have the practical effect of terminating the father's parental rights, the statutory and constitutional protections afforded in the context of a termination of parental rights proceeding are not implicated.

On appeal, for the first time, the father asserts that because the trial court order does not allow him to have contact with his child, it leaves him "defenseless against a Petition to Terminate Parental Rights if one is eventually filed," and is therefore "unjust and not aligned with the purpose of RSA 461-A."  We decline to address this argument because the father did not raise it before the trial court.  See State v. Blackmer, 149 N.H. 47, 48 (2003) (noting that

3

"trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court" (quotation omitted)).

<u>Affirmed</u>.


LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.


**Eileen Fox,**
**Clerk**