# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0377, <u>In the Matter of Alexis Neff and Jonathan Shields</u>, the court on May 16, 2019, issued the following order:**

Having considered the brief, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Jonathan Shields (father), appeals a final order of the Circuit Court (<u>Carbon</u>, J.) in his divorce from the petitioner, Alexis Neff (mother). He contends that the trial court erred by: (1) determining the amount of child support he was required to pay; and (2) denying his request for equal parenting time and reducing his existing parenting time.

We first address whether the trial court erred in determining the amount of the father's child support obligation. We will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. <u>In the Matter of Silva & Silva</u>, 171 N.H. 1, 4 (2018). When we determine whether a ruling is a proper exercise of judicial discretion, we are really deciding whether the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment. <u>Id</u>.

In this case, because the mother was working without pay for a new business owned by her domestic partner, she had no income. However, she submitted a financial affidavit reflecting her income from her previous employment, effectively imputing that amount of income to herself. <u>See</u> RSA 458-C:2, IV(a) (2018) (allowing trial court to consider as gross income, for child support purposes, difference between amount parent is earning and amount parent has earned when parent is voluntarily under-employed or unemployed); <u>cf</u>. <u>In the Matter of Rohdenburg & Rohdenburg</u>, 149 N.H. 276, 277 (2003) (reversing child support calculation in part because obligee failed to complete financial affidavit). She testified that, when the new business began to turn a profit, she would be paid that amount. She also submitted a letter from her domestic partner, as the owner of the business, stating her hours and wage.

The mother testified that, while she was not being paid, her domestic partner withdrew funds from the business's account to cover the household's expenses, which included the mother's expenses and those of her children with the respondent, as well as those of her child with the domestic partner. She

testified specifically that the business account belonged to her domestic partner and that he made all withdrawals.

On appeal, the father contends that "[b]ecause the trial court did not know what [the mother's] monthly income was . . . , it was incapable of accurately calculating" his child support obligation. He argues that the trial court could not determine the mother's income without the domestic partner's business account records to inform it of how much the domestic partner withdrew to support the household. However, the father does not explain the relationship between the domestic partner's withdrawals and the mother's income. See RSA 458-C:3 (2018) (basing child support upon parents' income); RSA 458-C:2, IV(a) (authorizing trial court to impute income up to amount parent "has earned"). To the extent that the father argues that the business account was subject to mandatory disclosure under Family Division Rule 1.25-A(B)(1)(h) because it was "held . . . in the name of another person for the benefit of" the mother, he does not develop this argument. See State v. Blackmer, 149 N.H. 47, 49 (2003).

The father acknowledges that the trial court "calculated [his] child support obligation pursuant to the statutory guidelines." On this record, we conclude that the trial court's determination of the father's child support obligation was supported by the evidence and not legally erroneous. See Silva, 171 N.H. at 4.

Next we address whether the trial court erred in denying the father's request for equal parenting time and reducing his parenting time. When reviewing a trial court's decision on parenting rights and responsibilities, our role is limited to determining whether it clearly appears that the trial court engaged in an unsustainable exercise of discretion. In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011); RSA 461-A:2, I(d) (2018) (stating that purposes of RSA chapter 461-A include "[g]rant[ing] . . . courts the widest discretion in developing a parenting plan"). We consider only whether the record establishes an objective basis sufficient to sustain the discretionary judgment. Kurowski, 161 N.H. at 585.

The trial court's discretion necessarily extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses. Id. Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. Id. Indeed, determining a child's best interest depends to a large extent upon the firsthand assessment of the credibility of witnesses, and the findings of the trial court are binding upon this court if supported by the evidence. Id.

In this case, the mother testified that the children were very tired after returning from overnights with the father, two of which were school nights. The children reported to her that they were allowed to stay up late and then to get up early to play video games. She described that the youngest child fell asleep as soon as he got into her vehicle and that the older children took naps when they

2

returned home, which was not typical for them. She further testified that one of the older children told her that he had fallen asleep in class more than once after a night with the father. Although the guardian ad litem (GAL) testified that the children's teachers had not observed the children sleeping in class, she acknowledged that the teachers might be unaware that the children were very tired. The GAL recommended against the children spending more time with the father "due to the concern that the children are not getting enough sleep."

The father argues that "[i]n light of the children's undeniably superior scholastic performance, [the mother's] claims that the children are falling asleep on a daily basis are highly suspect." The trial court found the mother's testimony credible. To the extent that the father argues that "there is a less [D]raconian way to enforce a routine sleep time, short of reducing [his] parenting time," he does not identify what that is, nor did he make this argument to the trial court.

Furthermore, the mother testified to two incidents that gave the trial court "pause." One involved the father "hit[ting] or tap[ping]" one of the children on the face with a cooking spoon as a means of stopping the child's belligerent behavior. The trial court expressed concern "that this was Father's way of managing . . . inappropriate behavior."

The second incident involved the father leaving all four children, who were 15, 14, 11, and 6 years old, in a swimming pool unsupervised and without a lifeguard. The children told the mother that the youngest child, who could not swim, had become submerged and had to be rescued, frightening them all. The father testified that the children had fun and did not mention anything untoward. The trial court stated that the father's testimony that the children "did not say a word to him is simply not credible." It concluded that the father had been "irresponsible."

The father argues that the trial court did not provide him with additional parenting time during vacations to compensate for his loss of parenting time on school nights. He further argues that the trial court reduced his telephone contact with the children, apparently by ordering that the children be allowed to phone either parent at will. However, the trial court has wide discretion in matters involving custody and visitation. In the Matter of Miller & Todd, 161 N.H. 630, 640 (2011). Furthermore, the record does not reflect that he raised the issue of telephone contact in the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (stating appealing party's burden to supply record sufficient to decide issues on appeal).

The father complains that the trial court noted that, when requesting more parenting time, "he did not testify as to why that would be in [the children's] best interests." However, the trial court could reasonably expect the father to address the standard that it had to apply. See RSA 461-A:6, I (Supp. 2018) (providing that when determining parental rights and responsibilities, trial court "shall be

3

guided" by child's best interest).  The father argues that the trial court gave the mother's testimony too much weight.  Yet, we defer to the trial court on the weight given to evidence.  See Kurowski, 161 N.H. at 585.

On this record, we conclude that the trial court's decision regarding parenting time was supported by the record and not legally erroneous.  See id.

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.


**Eileen Fox,**
**Clerk**