# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0351, <u>C.W. v. J.G.</u>, the court on March 20, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The defendant, J.G., appeals a civil stalking final order of protection, <u>see</u> RSA 633:3-a (2016), entered against him by the Circuit Court (<u>Cabrera</u>, J.), following a hearing, for the protection of the plaintiff, C.W.  We construe the defendant's brief to argue that the trial court's order is unsupported by the evidence and contrary to the weight of the evidence.  We affirm.

A person commits the offense of stalking if he "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for . . . her personal safety. . . , and the person is actually placed in such fear."  RSA 633:3-a, I(a).  A course of conduct "means 2 or more acts over a period of time, however short, which evidences a continuity of purpose," and includes, but is not limited to, "[f]ollowing, approaching, or confronting that person," and "[a]ppearing in close proximity to, or entering the person's residence, place of employment . . . or other place where the person can be found."  RSA 633:3-a, II(a)(2), (3).

At the start of the hearing, the plaintiff testified that the facts in her petition were true to the best of her knowledge and belief, and she made them part of her testimony.  She testified that the defendant told her that he was not allowed to purchase firearms because he had robbed a bank, and that he asked her to purchase firearms for him.  She testified that the defendant wrote a list of firearms that he wanted her to purchase.  The plaintiff testified that the defendant's request gave her "a very odd feeling."  She testified that "[f]irearms are very dangerous," that she had no intention of buying firearms for the defendant, and that she hoped that the issue would "go away" if she did not meet up with him on the day he requested.  She testified, however, that the defendant continued to contact her.  She testified that she was concerned that "maybe because I didn't [purchase the firearms], I might get killed too."

The plaintiff reported this information to the police, although she felt that by doing so, she was placing herself in danger.  She expressed her concern to the police that "if [the defendant] was angry or upset at me for not doing what he asked or for going to somebody and reporting it, something might happen to me."  The plaintiff testified that the police were familiar with the defendant from

a prior interaction with him, and that "they wanted to make sure that I was safe." The plaintiff testified that, although the defendant said his name was "Jack," she did not know his real name. In his brief, the defendant asserts that his nickname is "Jack," but he did not provide any such testimony in the trial court.

The defendant testified that his conversations with the plaintiff were "thoroughly innocuous." He testified that if the plaintiff did not want to continue communicating with him, then she could have asked him to stop, but she never did. The defendant testified that the plaintiff asked <u>him</u> if <u>he</u> wanted to buy a gun from <u>her</u>. The defendant testified that he cannot legally purchase a firearm because he had been convicted of theft, and that although he gave the plaintiff a list of firearms he would like to buy, he did not want to obtain a firearm before it was permissible to have one.

The defendant testified that his prior interaction with the police involved a domestic matter between two other people, which he reported to police. The defendant testified that he "spoke with the chief," who "took something the wrong way," and that the chief mistakenly believed that the defendant was threatening him.

The trial court found that the defendant "[a]sked the plaintiff to purchase firearms for him even though he is disqualified from purchasing them," and that he "[c]ontinued calling and texting to follow up on this request." The court found that the defendant "provided [the plaintiff] with a false name, and said he had seen her around for the last year." The court found that the plaintiff "communicated her fear of firearms to him but he continued to follow up on his request." The court concluded that the defendant's conduct constituted stalking and ordered him to have no contact with the plaintiff.

The defendant argues that the trial erred by crediting the plaintiff's testimony, and by rejecting his testimony, as to the issues in dispute at the hearing. Conflicts in testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. <u>In the Matter of Kurowski & Kurowski</u>, 161 N.H. 578, 585 (2011). We will affirm the trial court's findings if a reasonable person could have made them based upon the evidence presented. <u>Cook v. Sullivan</u>, 149 N.H. 774, 780 (2003). We conclude that a reasonable person could have made the findings the trial court did based upon the evidence presented. <u>See</u> <u>id</u>.

Any remaining arguments in the defendant's brief are insufficiently

developed and warrant no further review.  See State v. Blackmer, 149 N.H. 47, 49 (2003).

Affirmed.

MacDonald, C.J., and Bassett, Hantz Marconi, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**