# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0637, <u>In the Matter of James Morse and Vanilla Moonstone</u>, the court on June 19, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The respondent, Vanilla Moonstone, appeals a final decree and parenting plan issued by the Circuit Court (<u>Yazinski</u>, J.) in her divorce from the petitioner, James Morse. <u>See</u> RSA 458:19 (Supp. 2014); RSA 461-A:6 (Supp. 2014). She contends that the trial court erred by: (1) "awarding primary residential responsibilities for the children" to the petitioner; and (2) declining to award her temporary alimony.

We first address the respondent's challenges to the parenting plan. To the extent that the respondent argues that our review should be <u>de novo</u> because the trial court "did not properly determine the relevant factors and[,] thus, misapplied the law to the facts of this matter," we disagree; when reviewing a trial court's decision on parenting rights and responsibilities, our role is limited to determining whether it clearly appears that the trial court engaged in an unsustainable exercise of discretion. <u>In the Matter of Kurowski & Kurowski</u>, 161 N.H. 578, 585 (2011). The trial court's determination in a parenting rights case depends to a large extent upon a firsthand assessment of the credibility of witnesses, as well as the character and temperament of the parents. <u>In the Matter of Hampers & Hampers</u>, 154 N.H. 275, 281 (2006). It is not our role to calculate how much weight the trial court should afford specific evidence, second guess its decisions on matters of witness credibility, or substitute our judgment for that of the trial court on a discretionary ruling. <u>Kurowski</u>, 161 N.H. at 600. Rather, we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. <u>Id</u>.

When determining parental rights and responsibilities, a trial court's overriding concern is the best interest of the children. RSA 461-A:6, I; <u>In the Matter of Miller & Todd</u>, 161 N.H. 630, 641 (2011). RSA chapter 461–A, the Parental Rights and Responsibilities Act, states that "children do best when both parents have a stable and meaningful involvement in their lives." RSA 461–A:2, I (Supp. 2014). Accordingly, this state's policy is to "[s]upport frequent and continuing contact between each child and both parents" and to "[e]ncourage parents to share in the rights and responsibilities of raising their children." RSA

461–A:2, I(a), (b).  The Act codifies the best interest standard, setting forth twelve factors that the court must consider, including:

> (e) The ability and disposition of each parent to foster a positive relationship and frequent and continuing physical, written, and telephonic contact with the other parent, including whether contact is likely to result in harm to the child or to a parent.
>
> (f) The support of each parent for the child's contact with the other parent as shown by allowing and promoting such contact . . . .
>
> (g) The support of each parent for the child's relationship with the other parent . . . .

RSA 461–A:6, I(e)-(g).  A child's best interest is furthered by nurturing the child's relationship with both parents, and a sustained course of conduct by one parent designed to interfere in the child's relationship with the other casts serious doubt upon the offending party's fitness to be a custodial parent.  Miller, 161 N.H. at 641.

The respondent argues that the trial court "did not properly determine the relevant factors."  The trial court awarded primary residential responsibility for the children during the school year to the petitioner and during the summer to the respondent.  It stated that the respondent's "behavior during the course of this case," which had led it to find her in contempt of the temporary parenting orders, caused it to be concerned about her willingness to cooperate with the petitioner in raising their children.  It found that that the respondent "has attempted to interfere with [the petitioner's] parenting time" and that "it is more likely that [the petitioner] would be willing to accommodate a Parenting Plan which divides residential responsibilities than would [the respondent]."  It granted the petitioner's requested findings that "[t]he Respondent has taught the children to keep secrets from their father" and "has attempted to severely limit the Petitioner's access to his children."  The respondent argues that "[t]here was no real evidence submitted to demonstrate that [she] would not allow the children to continue to have contact with the [petitioner]."  We conclude that the record supports the trial court's findings.

The respondent testified that, after the petitioner left the marital home, she refused to allow him to see the children except at a supervised visitation center.  She further testified that, even after the temporary orders granted the petitioner parenting time, she prevented him from seeing the children until he obtained a contempt order.  The guardian ad litem (GAL) testified that the contempt order provided that if the respondent did not comply with the order, the petitioner would be granted residential responsibility.  The respondent testified that, after the contempt order, she would not come to the door when the petitioner arrived

2

to pick up the children unless the police were present. The GAL testified that the respondent moved during the divorce and failed to notify the petitioner in advance, as required by the temporary order, or to provide him with the children's new address until threatened with a motion for contempt. The respondent testified that she failed to inform the petitioner that all three children were having their tonsils removed. The GAL reported that the respondent's "hostility to the idea of [the petitioner] being an active and responsible parent, coupled with her near complete control of the children's educational, emotional and spiritual development present a significant risk . . . of marginalizing [the petitioner] . . . and diminishing the bonds he shares with them."

The respondent argues that awarding the petitioner primary residential responsibility during the school year violates her "constitutional right to home school her children" and that "[t]he best interest standard does not and cannot abrogate a fit parent's constitutional right to direct the upbringing of her child." However, the record does not reflect that she raised a constitutional argument in the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). Furthermore, she does not develop it. See State v. Chick, 141 N.H. 503, 504 (1996). Even if her argument were preserved and developed, in the context of a divorce, the trial court has the authority to adjudicate disputes between two fit parents involving parental rights in accordance with the child's best interest. See Kurowski, 161 N.H. at 590. The mere fact that the petitioner agreed to home schooling in the past and now wishes to place the children into public school does not alter the trial court's responsibility.

The respondent argues that the trial court "failed to recognize the detrimental impact upon the children" of removing them from home schooling and that the petitioner "did not present any legitimate reason to modify" the parties' agreement to home school the children. However, the petitioner testified that he was "very concerned" about the children's reading and writing skills and their social development. The GAL testified that the respondent home schooling the children "invites continuing opportunity for alienating their dad from these kids' lives." Furthermore, as the trial court correctly stated, "[n]ow that the parties are divorced, [the respondent] cannot rely on [the petitioner] to subsidize her desire to home school the parties' children."

The respondent argues that the trial court construed evidence regarding a neglect proceeding involving her older children from a prior relationship against her "notwithstanding the fact that the [petitioner] was also in the household at the time of those events." However, the respondent testified that the petitioner was never charged with neglect. The GAL reported that an assessment by the Division for Children, Youth and Families involving the older children indicated the possibility of child abuse by the respondent and "perhaps to a much lesser degree" by the petitioner. The GAL reported that the respondent was found to have neglected one older child. The respondent argues that "there was no

3

evidence that any of the concerns raised regarding [the older] children were related in any manner to the parties' children." However, the GAL testified that he was concerned that the problems that led to the removal of the older children might arise with respect to the parties' children.

The respondent argues that the petitioner "showed no ability to independently parent his children." However, the GAL reported that the petitioner's references indicated that "he is a gentle and caring father and that, while still learning about being a single parent, he is sincere and committed to parenting the children in an age appropriate and safe manner." The petitioner's mother testified that she and his father would be available for a year to assist him in transitioning to single parenthood. She further testified that the petitioner cooked for the children "once or twice almost every visit" and that she no longer usually accompanied him when he took the children places. The respondent argues that "[s]he had been [the children's] primary parent during the course of the marriage and after the separation." However, the trial court expressed "concern about her willingness to cooperate with [the petitioner] in raising the parties' children." See Miller, 161 N.H. at 641.

The respondent argues that the trial court did not properly consider the "drastic change to the children's lifestyle" caused by transferring primary residential responsibility to the petitioner. However, the trial court considered the respondent's behavior during the course of the divorce and found that residing with the petitioner during the school year and having "continued regular contact" with respondent is in the children's best interest. We conclude that the record establishes an objective basis sufficient to sustain the trial court's discretionary judgment regarding residential responsibility for the children.

We next address the denial of alimony. An alimony award requires a finding that the party in need lacks sufficient income, property, or both to provide for her reasonable needs, considering the style of living to which the parties have become accustomed during the marriage. RSA 458:19, I(a). We review the trial court's decision for an unsustainable exercise of discretion. Hampers, 154 N.H. at 283. In this case, the trial court found that the respondent "failed to carry her burden to show she is in need of alimony" because: (1) it "awarded her a substantial amount of money from [the petitioner's] retirement account"; (2) "[t]he parties lived a very frugal, almost Spartan existence during the term of their marriage"; and (3) she has "numerous marketable skills" and "is able to be self-supporting, once she obtains appropriate employment."

The respondent argues that "the parties had agreed that [she] would be a stay at home mother and home school the children," that she "had not maintained any reasonable employment for many years," and that she "clearly demonstrated a need for at least temporary alimony in order to allow her time to re-enter the work force." However, she testified that she moved during the

4

divorce, thereby increasing her rental payments significantly. She testified that she paid the rent in cash each month, but could not document that the cash was withdrawn from her bank account. The respondent also testified that, during the divorce, she donated $222 per month to charity. The respondent agreed that she was capable of getting a job, but testified that she did not think she would have to do so. We note that the trial court awarded the respondent approximately $116,000 from the petitioner's 401(k). We conclude that the record establishes an objective basis for the trial court's decision.

To the extent that the respondent raises additional arguments, they are either not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**