Lebanon Family Division
No. 2009-312

IN THE MATTER OF ADAM MUCHMORE AND AMY JAYCOX

Argued: November 4, 2009
Opinion Issued: December 4, 2009

*Decato Law Office*, of Lebanon (*R. Peter Decato* on the brief and orally), for the petitioner.

*Stebbins Bradley Harvey Miller & Brooks, P.A.*, of Hanover (*Stephen P. Girdwood* on the brief and orally), for the respondent.

DALIANIS, J. The respondent, Amy M. Jaycox, appeals an order of the Lebanon Family Division (*MacLeod*, J.) modifying the parties' parenting plan. We reverse.

The record evidences the following facts. The parties are the unwed parents of a daughter, who was born in September 2006. When the child was born, both parents resided in Vermont; they now reside in New Hampshire.

In June 2007, a Vermont court entered a stipulation and order granting the respondent "primary legal and physical parental rights and responsibilities" for the child and allowing the petitioner, Adam Muchmore, regular weekly contact with the child. The stipulation and order permitted either party to petition to modify the parenting schedule when the child was between the ages of three and four.

In July 2008, when the child was not quite two years old, the petitioner petitioned the Lebanon Family Division to register the Vermont stipulation and order in New Hampshire, *see* RSA 458-A:15 (2004), and to modify it, *see* RSA 458-A:14 (2004); RSA 461-A:11 (Supp. 2008). The petitioner contended that modification was warranted because: (1) the respondent had "repeatedly, intentionally, and without justification" interfered with his parental responsibilities for the child and modification would be in the child's best interests, *see* RSA 461-A:11, I(b); (2) there was clear and convincing

evidence that the child's present environment was harmful to her, *see* RSA 461-A:11, I(c); and (3) because of the respondent's conduct, the original allocation of parental rights and responsibilities was not working, *see* RSA 461-A:11, I(d).

The respondent objected and moved to dismiss the petition on the ground that the petitioner had failed to meet his burden of proof under RSA 461-A:11. Following an evidentiary hearing, the trial court denied the motion, ruling that while the petitioner's evidence was insufficient to carry his burden of proof under RSA 461-A:11, I(b) or (c), it was sufficient to establish that modifying the parties' parenting schedule would be in the child's best interests, and that, pursuant to RSA 461-A:4 (Supp. 2008), proof that modification was in the child's best interests was all that was required. The respondent moved for reconsideration, which was denied, and this appeal followed.

We will not overturn a trial court's modification of an order regarding parenting rights and responsibilities unless it clearly appears that the court unsustainably exercised its discretion. *See In the Matter of Choy & Choy*, 154 N.H. 707, 711 (2007). Resolving the issues in this appeal requires that we engage in statutory interpretation. We review a trial court's statutory interpretation *de novo. Id.* We note, at the outset, that there is no choice of law issue in this case because the parties agree that New Hampshire law governs.

In matters of statutory interpretation, we are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. *In the Matter of Carr & Edmunds*, 156 N.H. 498, 503-04 (2007). We begin our analysis by looking to the language of the statute itself. *In the Matter of LaRue & Bedard*, 156 N.H. 378, 380 (2007). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* If the language is plain and unambiguous, then we need not look beyond it for further indication of legislative intent. *Id.* We interpret a statute in the context of the overall statutory scheme and not in isolation. *In the Matter of Carr & Edmunds*, 156 N.H. at 504. "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." *Fichtner v. Pittsley*, 146 N.H. 512, 514 (2001) (quotation omitted).

RSA 461-A:4, I, provides, in pertinent part:

> In any proceeding to establish or modify a judgment providing for parenting time with a child, . . . the parents shall develop and

file with the court a parenting plan to be included in the court's decree. If the parents are unable to develop a parenting plan under this section, the court may develop it.

Pursuant to its plain meaning, RSA 461-A:4, I, requires parents to submit a parenting plan to the court for inclusion in its decree. This requirement pertains both to proceedings to establish a parenting plan in the first instance and to modify an existing plan. *See* RSA 461-A:4, I. RSA 461-A:4, I, is silent, however, as to when a parent may seek to modify an existing parenting plan.

RSA 461-A:11 governs the circumstances under which a parent may seek modification of an existing parenting plan. RSA 461-A:11 provides: "The court may issue an order modifying a permanent order concerning parenting rights and responsibilities" once a parent has proved that any one of four circumstances exists: (1) the parents have agreed to the modification, *see* RSA 461-A:11, I(a); (2) one parent has repeatedly and intentionally interfered with the other parent's residential responsibilities and modifying the parents' responsibilities would be in the child's best interests, *see* RSA 461-A:11, I(b); (3) the court finds by clear and convincing evidence that the child's present environment is detrimental to the child and the advantage of modifying the order outweighs the harm to the child from changing her environment, *see* RSA 461-A:11, I(c); or (4) the parents "have substantially equal periods of residential responsibility for the child," either one parent asserts or the court finds that the original allocation is not working, and modifying the order is in the child's best interests, *see* RSA 461-A:11, I(d).

Only after a parent has proved that one of these circumstances exists may the court then modify the existing plan. *See* RSA 461-A:11. When drafting a modified parenting plan, the court must consider "only the best interests of the child as provided under RSA 461-A:6 and the safety of the parties." RSA 461-A:4, I, :6 (Supp. 2008).

Here, the trial court found that the petitioner did not meet his burden of proof under RSA 461-A:11, I(b) or (c). Although the trial court did not address whether he met his burden of proof under RSA 461-A:11, I(d), the parties agree that he failed to do so. The petitioner contends that even though *none* of the circumstances set forth in RSA 461-A:11, I, exists, he was entitled, nonetheless, to a modification of the existing parenting plan based only upon proof that doing so was in the child's best interests. He surmises that when none of the circumstances set forth in RSA 461-A:11, I, apply, a parent may seek modification when doing so is in the child's best interests. To support this assertion, he relies upon the reference to a proceeding to modify a parenting plan found in RSA 461-A:4, I. *See* RSA

461-A:4, I (requiring parents in "any proceeding to establish or modify" a parenting plan to submit such a plan to the court).

■ The plain language of RSA 461-A:11, I, does not support this construction. RSA 461-A:11, II requires the party seeking modification to prove that one of the four circumstances listed in RSA 461-A:11, I, exists. RSA 461-A:11, I, allows a trial court to modify an existing parenting plan under any of those circumstances. RSA 461-A:11, I, does not grant the court discretion to modify an existing plan under any other circumstances. The petitioner's assertion requires that we add language to RSA 461-A:11, I, which we cannot do. *See In the Matter of LaRue & Bedard*, 156 N.H. at 380. Had the legislature intended to permit the trial court to modify a parenting plan under circumstances other than those listed in RSA 461-A:11, it could have said so. Of course, if the legislature disagrees with our construction, it is free to amend the statute as it sees fit. *See Zorn v. Demetri*, 158 N.H. 437, 441 (2009).

RSA 461-A:11, I, simply does not allow a party to seek modification of an existing parenting plan when, as in this case, none of the circumstances listed therein exists. While this problem may regrettably prevent a trial court from reassessing the best interests of a child in circumstances where the parents are not interfering and where the child's current environment is not detrimental, it is not up to the court to solve it or to speculate as to how the legislature might choose to do so. For us to determine on review whether modification may be had under the circumstances of this case, and, if so, the burden of proof to be applied, "under our constitutional supervisory authority would in our view be an invasion of a policy area better decided by the legislature." *State v. Ingerson*, 130 N.H. 112, 117 (1987).

■ The petitioner argues that RSA 461-A:11 does not apply to this case because the trial court was not, in fact, modifying an existing parenting plan, but creating a new one. The Vermont order, he contends, "did not constitute a parenting plan" because it "was not comprehensive and didn't include all of the features commonly seen in a New Hampshire parenting plan." RSA 461-A:1, V (Supp. 2008) defines a "[p]arenting plan" as a "written plan describing each parent's rights and responsibilities." The Vermont stipulation and decree meets this definition and was a "judgment providing for parenting time with a child" within the meaning of RSA chapter 461-A. RSA 461-A:4, I.

Moreover, pursuant to the Uniform Child Custody Jurisdiction Act, *see* RSA ch. 458-A (2004 & Supp. 2008), the trial court was required to "recognize and enforce" the Vermont decree, RSA 458-A:13; it could not ignore it. An out-of-state custody decree that has been filed in this state "has the same effect and shall be enforced in like manner as a custody

decree rendered by a court of this state." RSA 458-A:15, I; *see* RSA 461-A:20 (Supp. 2008) (the word "custody" means "the allocation of parental rights and responsibilities" as provided in RSA chapter 461-A).

 The petitioner also argues that RSA 461-A:11 does not apply because he merely sought a change to "visitation," and such changes, he asserts, are governed by RSA 461-A:4. The plain language of both provisions fails to support these contentions. Moreover, several provisions in RSA chapter 461-A make clear that the terms "visitation" and "custody," referring to parental rights and responsibilities, are anachronisms. The word "visitation" is used in RSA chapter 461 to refer to privileges granted to non-parents, such as stepparents and grandparents. *See* RSA 461-A:6, V (Supp. 2008) (allowing court to grant "reasonable visitation privileges" to stepparents and grandparents when doing so is in child's best interests). The word "custody" has been replaced in RSA chapter 461-A with the phrase "parental rights and responsibilities." *See* RSA 461-A:20.

For all of the above reasons, therefore, we conclude that the trial court erred by modifying the parties' decree absent proof of one of the circumstances listed in RSA 461-A:11.

*Reversed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.