NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court–Merrimack Family Division
No. 2018-0264

IN THE MATTER OF STEVEN SUMMERS AND CHRISTINE SUMMERS

Argued: June 18, 2019
Opinion Issued: August 6, 2019

Smith-Weiss Shepard, P.C., of Nashua (Robert M. Shepard on the brief and orally), for the petitioner.

Solomon Professional Association, of Londonderry (Elaine M. Kennedy on the brief and orally), for the respondent.

HICKS, J. The respondent, Christine Summers (Mother), appeals and the petitioner, Steven Summers (Father), cross-appeals an order of the Circuit Court (Ryan, J.) dated March 2, 2018, which modified the parties' prior parenting plans. On appeal, Mother contends that the trial court unreasonably failed to grant her equal parenting time after finding that she was sober, had complied with the court's prior orders, and had a strong bond with the parties' children. In his cross-appeal, Father argues that the trial court lacked statutory authority to modify the parties' prior parenting plans because Mother neither pleaded nor proved a statutory ground for modification. We affirm.

The following facts either were found by the trial court or relate the contents of documents submitted as part of the appellate record. The parties are parents of twins born in October 2009. According to Mother, Father filed for divorce in January 2014. The trial court entered a temporary parenting

plan in August 2014, which awarded the parties joint decision-making responsibility for their children and granted them roughly equal parenting time.

The final hearing on the parties' divorce was held in September 2015. According to Father, in March 2016, he filed an emergency motion to suspend Mother's time with the children because of Mother's active alcoholism, averring that Mother had been removed from her parents' home by the police while the children were there. According to Father, police observed that Mother had slurred speech, was unsteady on her feet, and was difficult to converse with. Father asserts that, in April 2016, the trial court ordered Mother to submit "to an EtG Hair Alcohol Test" within ten days and that her parenting time would be supervised by her parents, and ordered her parents to notify the children's guardian ad litem (GAL) of any alcohol use by Mother. See RSA 461-A:9 (2018) (concerning ex parte orders). In that order, according to Father, the trial court observed that, although Mother denied having a drinking problem, the police "found a nearly full bottle of Vodka, an empty bottle of wine, six empty beer cans, an empty bottle of Vodka, an empty box of wine, a full box of wine and an empty bag of wine" in her bedroom.

On June 24, 2016, Father filed a second emergency motion to suspend Mother's parenting time based upon her active alcoholism. In that motion, he alleged that Mother had been arrested twice in one week for driving while intoxicated (DWI). He averred that those were not her first arrests for DWI. The GAL assented to the motion and alleged that Mother had been arrested for DWI in Candia on June 20 and in Bedford on June 23. The trial court entered an ex parte order granting Father temporary sole decision-making and residential responsibility for the children. See id.

The trial court held a hearing on August 2, and, according to Father, verbally modified its ex parte order to allow Mother to have supervised parenting time with the children on Sunday and Tuesday. See id. On October 31, 2016, the trial court entered its final decree in the parties' divorce and a final parenting plan.

The October 2016 parenting plan grants the parties joint decision-making responsibility, see RSA 461-A:5 (2018), and grants Father primary residential responsibility for the children, see RSA 461-A:6, I-III (2018) (amended 2018). Under the plan, Mother has parenting time with the children "[e]very other weekend from Friday after school until Sunday at 7:00 pm" and "[e]very Wednesday from after school until Thursday morning at the beginning of school." The plan provides that, as Mother "resides with her parents," her "parenting time shall be supervised by her parents until this Parenting Plan is modified by agreement of the parties or an Order from [the] court." The parenting plan precludes both parents from abusing alcohol or using illegal drugs.

2

In the narrative order accompanying the October 2016 plan, the trial court discussed Mother's request to make the parenting plan temporary:

> It should be noted that all the hearings held after the Final Hearing [in September 2015] were due [to Mother's] alcohol addiction.  Throughout this process, [Mother] has not been honest with the Court about her alcohol issues.  She has attempted to either minimize her alcoholism or hide it entirely from the Court.  She has been arrested at least 3 times for DWI during the pendency of this action, the police have reported bottles of alcohol in her bedroom at her parents' home.  While she would like the Court to make any Parenting Plan temporary so that she can finally deal with her problems, the Court is not inclined to do so.

The court stated that the parenting plan attached to its narrative order "is Final," but that "it is subject to review in 6 months to determine if the parenting schedule should be modified to again allow shared or equal parenting time."  The narrative order further stated that "[a]ny change or modification in the Parenting Plan shall be subject to [Mother] addressing her alcoholism in a meaningful way which would include[,] at a minimum[,] participation in an Intensive Outpatient Program [and] her continued sobriety," and that any modification would have to be "in the best interests of the children."  In its narrative order, the trial court specifically found that because of Mother's active alcohol addiction and her actions in hiding it from the court, "shared/equal parenting time is not in the children's best interests."

Neither party appealed to this court the trial court's October 2016 parenting plan or the narrative order accompanying it.  Thus, for the purposes of this appeal, we assume without deciding that, contrary to Father's contentions, the review provision set forth in the trial court's October 2016 narrative order was lawful.

Just days later, on November 2, Father filed a partially-assented-to third emergency motion to suspend Mother's parenting time.  See RSA 461-A:9.  In that motion, he averred that Mother "has repeatedly tested positive for alcohol consumption," that she last saw the children on October 14 and tested positive for alcohol consumption on that date, and that she "has not entered intensive out-patient alcohol treatment" or had "any counseling at all."  Father requested that the court grant him sole decision-making responsibility and that it suspend Mother's parenting time.  According to Father, the GAL assented to the motion.

The court temporarily ordered Father's requested relief, and, in December, held a hearing on his ex parte motion.  See id.  On February 6, 2017, the court ruled as follows:

3

The overwhelming evidence presented at the hearing was that at least until [Father's] filing of his Ex Parte Motion, [Mother] was in substantial non-compliance with the Court's Order regarding her use of alcohol. The evidence was that . . . only after [Father] filed his Ex Parte Motion and the Court issued Temporary Orders did [Mother] start to take proactive measures to deal with her alcoholism. The evidence also showed that once [Mother] started to take measures to deal with her alcoholism, . . . she has been clean and sober.

While the Court continues to be concerned about [Mother's] relapsing, the Court also recognizes that she has a strong bond with the children and they with her. The Court also recognizes that [she] has taken the steps necessary to deal with the disease of alcoholism that she had for so long denied she suffered from. The Court feels that as long as [Mother] continues in counseling, her parenting time is supervised by her parents and she continues in the [alcohol testing] program that sufficient safeguards are in effect to ensure the children's safety. Therefore, the Court finds that the Court's Final Parenting Plan shall be implemented with the exception that [Mother's] Wednesday parenting time shall be from 5:00 pm until 8:00 pm[,] not overnight.

Neither party argues that the trial court lacked the authority to enter its February 2017 order modifying the October 2016 parenting plan by eliminating Mother's parenting time on Wednesday overnights and ordering that the children be returned to Father on those nights by 8:00 p.m. Thus, for the purposes of this appeal, we assume without deciding that the trial court had such authority.

In October 2017, Mother filed a motion to schedule a review hearing "relative to modifying the residential responsibilit[ies] of the parties" for their children. Father objected, arguing that the parties' parenting plan, as set forth in the court's February 2017 order, could not be amended unless Mother alleged "one . . . or more of the statutory factors listed in RSA 461-A:11, I." Father argued that "[w]ithout making a reference to any of the statutory factors . . . , there is no basis for the Court to modify the [parenting plan] in this case." He further contended that "[r]eviewing the [parenting plan] at this juncture[ ] is unfair to the parties and the children" because "[t]his case needs to have final closure and not remain open indefinitely."

The court held a review hearing in February 2018, and, thereafter, denied Mother's request for "shared parenting time," which the court termed a "substantial change" to the October 2016 parenting plan. The court rejected Father's assertion that it could not modify the parties' existing plan. The trial court, once again, allowed Mother to have the children overnight on

Wednesday, but eliminated the requirement that her parenting time be supervised. In effect, the trial court reinstated the October 2016 parenting schedule. In response to Mother's motion for reconsideration, the trial court made an additional change to the plan, but that modification is not an issue in this appeal.

We will not overturn a trial court's modification of an order regarding parenting rights and responsibilities unless it clearly appears that the trial court unsustainably exercised its discretion. In the Matter of Muchmore & Jaycox, 159 N.H. 470, 472 (2009). This means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. In the Matter of Kurowski & Kurowski, 161 N.H. 578, 585 (2011). The trial court's discretion necessarily extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses. Id. Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. Id. The trial court's factual findings are binding upon this court if they are supported by the evidence and are not legally erroneous. See id.

"Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." Cook v. Sullivan, 149 N.H. 774, 780 (2003). We will not substitute our judgment for that of the trial court. See Brent v. Paquette, 132 N.H. 415, 419 (1989). Nor will we reweigh the equities. In the Matter of Heinrich & Heinrich, 164 N.H. 357, 365 (2012).

However, to the extent that resolving a modification issue requires that we interpret pertinent statutes, we review the trial court's statutory interpretation de novo. See In the Matter of Kelly & Fernandes-Prabhu, 170 N.H. 42, 47 (2017). We are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. We interpret legislative intent from the statute as written, and we will not consider what the legislature might have said or add words that the legislature did not include. Id. Moreover, we interpret statutes in the context of the overall statutory scheme and not in isolation. Id.

On appeal, the parties dispute whether the trial court had the authority to modify their parenting plan without requiring Mother to plead and prove a statutory circumstance for such modification. See RSA 461-A:11, I (2018). We conclude that, to the extent that the trial court modified the February 2017 parenting plan by merely reinstating the October 2016 parenting plan, it could do so without requiring Mother to plead and prove a statutory ground for modification. The February 2017 parenting plan was a temporary order.

5

RSA 461-A:8 (2018) authorizes a trial court to issue temporary orders that provide for the "temporary allocation of parental rights and responsibilities of any minor child as provided in RSA 461-A:6." RSA 461-A:8, I; see RSA 461-A:6, I (setting forth the factors that trial courts must consider when examining the best interests of the child). The trial court's February 2017 order was issued, after a hearing, in response to Father's ex parte motion. As such, we construe it as a temporary change to the allocation of parental rights and responsibilities set forth in the court's October 2016 parenting plan.[1] RSA 461-A:11, I, addresses the requirements for issuing an order modifying "a permanent order concerning parental rights and responsibilities." Thus, those requirements do not apply to an order modifying a temporary order.

Mother argues that, instead of reinstating the October 2016 parenting schedule, the trial court should have granted her request for equal parenting time. She contends that the trial court was compelled to grant her request because it found that she had "complied with its[ ] Order to remain sober," had been "successful in her testing" for alcohol use, had "exercised her parenting time . . . without any problems," and had "continued in counseling." She asserts, "Having met the criteria established by the Court in its [October 2016] Order on Parenting, coupled with the Court's recognition that [she] has a strong bond with the children and they with her, the Court, upon review, should have restored [her] to shared parenting as being in the children's best interests." (Quotation and citation omitted.)

Assuming without deciding, solely for the purposes of addressing Mother's arguments, that the trial court could have modified the October 2016 parenting schedule without requiring her to plead and prove a statutory ground for modification,[2] see RSA 461-A:11, I, we conclude that, based upon the evidence before it, the trial court reasonably could have found that granting Mother equal parenting time with the children was not in their best interests. See In the Matter of Letendre & Letendre, 149 N.H. 31, 36 (2002) ("If the court's findings can reasonably be made on the evidence presented, they will stand.").

To the extent that Mother argues that the trial court's failure to grant her equal parenting time was inconsistent with its narrative order accompanying the October 2016 plan, we disagree. We interpret a trial court order de novo. In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008). The trial court's narrative order provided that the court would review the plan "in 6 months to determine if the parenting schedule should be modified to again allow shared or equal parenting time." The order further stated that "[a]ny change or modification in the Parenting Plan" would be subject to Mother "addressing her

---

[1] As previously noted, no party challenges the trial court's authority to issue the February 2017 order. Accordingly, we assume without deciding that RSA 461-A:8, I, authorized the trial court to issue a temporary order after the court had issued its permanent order.

[2] But see discussion, infra, at 9.

6

alcoholism in a meaningful way" by, at a minimum, participating in an intensive outpatient program and continuing her sobriety as reflected in testing and would have to be in the best interests of the children. Thus, contrary to Mother's assertions, merely meeting the stated conditions did not guarantee her equal parenting time. Moreover, it is undisputed that Mother did not, in fact, meet all of the stated conditions because she never completed an intensive outpatient program as ordered.

Mother contends that, to the extent that the trial court's decision to reinstate the October 2016 parenting schedule was based upon its concern that she might relapse, its concern is unfounded. However, there is evidentiary support for the trial court's concern. The sole witness at the February 2018 review hearing, who testified as an expert, opined that "there's a chance of relapse with anybody who's an alcoholic regardless of the treatment." He further opined: "In fact, I would go so far as to say, statistically, most alcoholics will drink again." He defined an alcoholic as "somebody who continues to drink despite the negative consequences associated with . . . drinking," and observed that there had been negative consequences in this case because of Mother's drinking. The trial court reasonably could have inferred from the expert's testimony that Mother is an alcoholic and that, therefore, "there's a chance" that she will relapse.

Mother also asserts that the trial court's failure to grant her request for equal parenting time violated her fundamental right to parent under the State Constitution. See N.H. CONST. pt. I, art. 2. Mother has failed to provide a record demonstrating that she made this constitutional argument in the trial court, as is her burden as the appealing party. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004); see also State v. Dellorfano, 128 N.H. 628, 632 (1986) (regarding requisites for preserving a state constitutional claim for our review). We, therefore, decline to address it.

To the extent that the trial court did not merely reinstate the October 2016 parenting plan, but, instead modified that plan by eliminating the requirement that Mother's parenting time be supervised, we hold that it could do so even though she neither pleaded nor proved a ground for modification under RSA 461-A:11, I. RSA 461-A:11 (2018) provides, in pertinent part:

> I. The court may issue an order modifying a permanent order concerning parental rights and responsibilities under any of the following circumstances:
>
> (a) The parties agree to a modification.
>
> (b) If the court finds repeated, intentional, and unwarranted interference by a parent with the residential responsibilities of the other parent, the court may order a change in the parental rights

7

and responsibilities without the necessity of showing harm to the child, if the court determines that such change would be in accordance with the best interests of the child.

(c) If the court finds by clear and convincing evidence that the child's present environment is detrimental to the child's physical, mental, or emotional health, and the advantage to the child of modifying the order outweighs the harm likely to be caused by a change in environment.

(d) If the parties have substantially equal periods of residential responsibility for the child and either each asserts or the court finds that the original allocation of parental rights and responsibilities is not working, the court may order a change in allocation of parental rights and responsibilities based on a finding that the change is in the best interests of the child.

(e) If the court finds by clear and convincing evidence that a minor child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature minor child as to the parent with whom he or she wants to live. Under these circumstances, the court shall also give due consideration to other factors which may have affected the minor child's preference, including whether the minor child's preference was based on undesirable or improper influences.

(f) The modification makes either a minimal change or no change in the allocation of parenting time between the parents, and the court determines that such change would be in the best interests of the child.

(g) If one parent's allocation of parenting time was based in whole or in part on the travel time between the parents' residences at the time of the order and the parents are now living either closer to each other or further from each other by such distance that the existing order is not in the child's best interest.

(h) If one parent's allocation or schedule of parenting time was based in whole or in part on his or her work schedule and there has been a substantial change in that work schedule such that the existing order is not in the child's best interest.

(i) If one parent's allocation or schedule of parenting time was based in whole or in part on the young age of the child, the court may modify the allocation or schedule or both based on a

finding that the change is in the best interests of the child, provided that the request is at least 5 years after the prior order.

II. Except as provided in RSA 461-A:11, I(b)-(i) for parenting schedules and RSA 461-A:12 for a request to relocate the residence of a child, the court may issue an order modifying any section of a permanent parenting plan based on the best interest of the child. RSA 461-A:5, III shall apply to any request to modify decision-making responsibility.

RSA 461-A:11, I, II.

We conclude that, pursuant to its plain language, RSA 461-A:11, II provides that: (1) to relocate the residence of a child, a party must meet the requirements of RSA 461-A:12 (Supp. 2018); and (2) to obtain a modification of a parenting schedule, a party must plead and prove one of the statutory circumstances set forth in RSA 461-A:11, I. See Muchmore, 159 N.H. at 473; see also Kelly, 170 N.H. at 45, 47. However, to modify any other section of a permanent parenting plan, a party need only prove that the modification is in the child's best interest. See RSA 461-A:11, II.[3]

In the instant case, the trial court modified the October 2016 plan by eliminating the requirement that Mother's parenting time be supervised. As Father acknowledges, that change was not a change to the parenting schedule. See RSA 461-A:1, VI (2018) (defining a "parenting schedule" as "the schedule of when the child is in the care of each parent"). Accordingly, we hold that, contrary to Father's assertions, the trial court could modify the plan in this way without requiring Mother to plead and prove a statutory circumstance enumerated in RSA 461-A:11, I.

Affirmed.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[3] In Kelly, which, unlike Muchmore, was decided after RSA 461-A:11, II was enacted, we stated that "RSA 461-A:11, I, grants a court authority to modify a permanent order concerning parental rights and responsibilities if it finds one of the specified predicate circumstances." Kelly, 170 N.H. at 47; see Laws 2011, 162:2 (inserting new text as paragraph II and re-designating prior paragraph II as paragraph III). To the extent that our language in Kelly could be interpreted to refer to modifications that do not concern a parenting schedule, the language is dicta. The modification that we discussed in that portion of Kelly was a change to the parenting schedule. Kelly, 170 N.H. at 44-45, 47 (concerning change from one parent having primary residential responsibility for the parties' son to a "nearly equal schedule of parenting time" (quotation omitted)).

9