1st Circuit Court — Berlin Family Division
No. 2011-833

IN RE NAME CHANGE OF ALEXANDER GOUDREAU

Argued: September 13, 2012
Opinion Issued: October 30, 2012

*The Crisp Law Firm, PLLC*, of Concord (*Jack P. Crisp, Jr.* on the brief and orally), for the petitioners.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the respondent.

LYNN, J. The respondent, Veronica Goudreau (mother), appeals the order of the 1st Circuit Court — Berlin Family Division (*Carroll*, J.), upon the recommendation of the Marital Master (*Barber*, M.), granting, in part, the request of the petitioners, Maurice and Gisele Lemieux, parents and next friend of Andrew Lemieux (father), to change the name of mother and father's child. We affirm.

The following facts are drawn from the record. Father and mother entered into a romantic relationship in high school. After mother became pregnant, the couple broke up. According to mother, father reacted negatively to the pregnancy, told mother that she was crazy for wanting to keep the child, preferred that mother give the child up for adoption, and did not provide her with emotional or financial support. Mother later gave birth to a boy and named him Alexander Bailey Goudreau.

Almost immediately after the child's birth, the petitioners filed a parenting petition and an *ex parte* motion for parenting time with Alexander. The parenting petition requested a parenting plan allocating parental rights and responsibilities. The motion for parenting time requested both a specific date for father to see Alexander and recognition of father's right to regular weekly contact with the child. The motion contended that "[father] ha[d] been adjusting emotionally to the reality of being a father at the age of 15, and [wa]s prepared, through the assistance of his parents, to accept responsibility and parent his child." The court granted the motion.

After the petitioners returned to court alleging that mother had limited father's parenting time with Alexander to one hour per week, the court issued a temporary parenting plan. The plan, among other things, gave mother primary residential responsibility for Alexander, created a regular weekly schedule for father to see the child, and ordered that the parents share responsibility for making major decisions about Alexander. In addition, the court ordered paternity testing, which subsequently confirmed father's paternity.

When Alexander was approximately fourteen months old, as the parties prepared for a hearing on a final parenting plan, the petitioners filed a

petition under RSA 490-D:2, X (2010) to change Alexander's full name from Alexander Bailey Goudreau to Alexander Bailey Lemieux. At a hearing on the petition, mother testified that she had carried Alexander for nine months, loved him very much, and "deserve[d] just as much as [father] to have [Alexander] have [her] name." Father testified that he was conflicted about becoming a father, but that he was "very satisfied with the road [he] chose, really getting to know [his] son." After the hearing, the court granted the petition in part, ordering that the child's name be changed from Alexander Bailey Goudreau to Alexander Goudreau Lemieux. The court reasoned:

> The court declines to fault a fifteen year old boy for his reluctance immediately to accept responsibility for Alexander. The reluctance did not last beyond Alexander's birth. The court makes it[s] decision based on the best interests of Alexander. Alexander has two parents who both care for him and love him. Andrew Lemieux's commitment to Alexander should be demonstrated in Alexander's name, as should Veronica Goudreau's.

On appeal, mother requests that we review *de novo* the trial court's order and restore Alexander's name to Alexander Bailey Goudreau. She argues that the best interest standard applied by the trial court is vague, undefined, arbitrary, and naked; that the standard "usually reflects the custom of giving a child its father's surname, and therefore reflects sexist social conventions"; and that even if we affirm the best interest standard applied by the trial court, father failed to prove that changing Alexander's name was in the child's best interest. Therefore, she requests that we either enumerate specific factors for a trial court to consider when ruling on a petition for change of name of a child under RSA 490-D:2, X, or that we adopt a presumption that the name chosen by the custodial parent is in the child's best interest.[1] We address each argument and request in turn.

As an initial matter, we reject mother's argument that we should review *de novo* the trial court's order. We conclude that our discretionary standard of review of decisions allocating parental rights and responsibilities applies in child-naming disputes. Historically, we have applied this standard in cases involving parental disputes over children, including those regarding decisionmaking and residential responsibilities. *See, e.g., In the Matter of Choy & Choy*, 154 N.H. 707, 713 (2007). Accordingly, "our role is limited to determining whether it clearly appears that the trial court

---

[1] Mother asserts that "one solution when parents cannot agree [on their child's name] is to simply hyphenate the parents['] surnames and give the child a compound name." We decline to address this "solution" because mother does not ask us to adopt such a rule.

engaged in an unsustainable exercise of discretion." *In the Matter of Kurowski & Kurowski*, 161 N.H. 578, 585 (2011). "We consider only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made." *Id.* (quotation and citation omitted).

We disagree with mother's contention that "the law today appears to require that to change a name the petitioner must show a substantial reason that the child would be adversely affected by its current name." This contention is based upon a misreading of *Moskowitz v. Moskowitz*, 118 N.H. 199 (1978), a decision pre-dating RSA 490-D:2, X and concerning the motions of two divorced women to restore their maiden names under a statute that permitted such restoration. RSA 458:24 (Supp. 1975). *Moskowitz* is factually and legally distinguishable, and, therefore, of little value in deciding the case before us.

■■ Turning to the merits of mother's arguments, we disagree that the best interest standard applied by the trial court is vague, undefined, arbitrary, and naked. Therefore, we decline her request that we enumerate specific factors that a trial court must consider when ruling on a petition for a change of name of a child under RSA 490-D:2, X. We do not accept mother's negative characterization of the best interest standard. The standard's elasticity is a virtue, not a sign of arbitrariness. Our precedent establishes that a child's best interests are served when a trial court has broad discretion to consider all factors bearing on the child's welfare and is not compelled to treat any single factor as dispositive of the inquiry. *See In the Matter of Kurowski & Kurowski*, 161 N.H. at 581; *In the Matter of Peirano & Larsen*, 155 N.H. 738, 748 (2007); *In the Matter of Hampers & Hampers*, 154 N.H. 275, 281 (2006). We see no reason why an enumeration of specific factors that a trial court must consider would better serve a child's interests in the context of petitions for a change of name of a child under RSA 490-D:2, X. Additionally, although we need not decide this issue to resolve the present case, we note that the best interest standard for allocating parental rights and responsibilities, RSA 461-A:6, may apply to petitions to change the name of a child. *See* RSA 461-A:1, IV (Supp. 2012) (" 'Parental rights and responsibilities' means *all* rights and responsibilities parents have concerning their child." (emphasis added)). Regardless of whether RSA 461-A:6 applies, we conclude that trial courts may consider the factors set forth therein when ruling on such petitions.

Next, we reject mother's contention that the best interest standard applied by the trial court "usually reflects the custom of giving a child its father's surname, and therefore reflects sexist social conventions." Mother

cites no decision from any jurisdiction reaching this conclusion. Instead, she contends that "[n]ormative law says it does not give precedence to the name of either parent[,]" and cites scholarly commentary observing that the best interest standard, like almost any other standard, may be abused. *See, e.g.,* Omi, *The Name of the Maiden,* 12 WIS. WOMEN'S L.J. 253, 270 (1997) (arguing that the standard has been abused to maintain "discriminatory traditions"). We are not persuaded that the best interest standard applied by the trial court "usually reflects the custom of giving a child its father's surname, and therefore reflects sexist social conventions."

■ We also reject mother's request that we adopt a presumption articulated by the New Jersey Supreme Court that the name chosen by the custodial parent is in the child's best interest. *See Gubernat v. Deremer,* 657 A.2d 856, 868-69 (N.J. 1995). In crafting this rule, the court noted that "as a result of the vagueness of [New Jersey's best interest] standard, judges have proposed different and frequently conflicting subjective factors for deciding whether a particular name is in a child's best interests — factors that lead to inconsistent resolutions of child-naming cases." *Id.* at 868. The record contains no evidence of such practices in New Hampshire. Moreover, we note that such a presumption could result in bias in favor of maternal surnames. *See Emma v. Evans,* 35 A.3d 684, 688 (N.J. Super. Ct. App Div. 2012) (citing recent statistics of the U.S. Census Bureau that 82.2% of custodial parents are mothers); *Schroeder v. Broadfoot,* 790 A.2d 773, 784 (Md. Ct. Spec. App. 2002) (finding that presumption in favor of a name chosen by the custodial parent "would have the practical effect of incorporating a maternal preference because, maternity being established by nature, custody of an infant almost always is with his mother"). In accord with the majority of courts from other jurisdictions, we conclude that no parent should benefit from a presumption in child-naming disputes. *See, e.g., In re Wilson,* 648 A.2d 648, 650 (Vt. 1994); *In re A.C.S.,* 171 P.3d 1148, 1151 (Alaska 2007).

■ Finally, we hold that the trial court sustainably exercised its discretion in changing the child's name to Alexander Goudreau Lemieux. The record supports the trial court's findings that, at the time of the petition's filing, both mother and father cared for, loved, and were committed to Alexander — findings which mother does not challenge on appeal. Accordingly, we conclude that the trial court had an objective basis sufficient to sustain its conclusion that Alexander's full name should include both parents' surnames. On appeal "[w]e consider only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made." *In the Matter of Kurowski & Kurowski,* 161

N.H. at 585 (quotation and citation omitted). Although additional fact finding might have aided our review of the trial court's order, we conclude that the trial court could reasonably have found that the name Alexander Goudreau Lemieux was in the child's best interest.

*Affirmed.*

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.