# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0343, In the Matter of David Connelly and Kimberly Kivela, the court on April 1, 2020, issued the following order:**

Because the respondent's brief does not contain proper citations to the record and refers to facts that are not supported by the record and evidence that is not part of the record, the motion to strike the respondent's brief is granted.  See Sup. Ct. R. 16(3)(d), (4)(a), (9); Mahmoud v. Irving Oil Corp., 155 N.H. 405, 406-07 (2007).  Accordingly, the court will not consider the brief filed by the respondent.  Nor will the court consider the reply brief filed by the petitioner.  See Panas v. Harakis & K-Mart Corp., 129 N.H. 591, 617 (1987) (stating that a reply brief may only respond to the opposing party's brief).

Having considered the petitioner's opening brief and the record submitted on appeal, we conclude that oral argument is unnecessary in this case.  See Sup. Ct. R. 18(1).  The petitioner, David Connelly (father), appeals a final parenting plan entered by the Circuit Court (DalPra, M., approved by Stephen, J.), following a three-day hearing, governing the parties' rights and responsibilities with respect to their two children.  In the parenting plan, the trial court established a routine schedule whereby during the school year, the father would have parenting time two out of every three weekends from Thursday after school until Sunday at 7:00 p.m., and during the summer, on alternating weeks.[1]  On appeal, he argues that the trial court erred by establishing a schedule pursuant to which, during the school year, the children reside primarily with the respondent, Kimberly Kivela (mother), and the father has "11 consecutive days once per month without parenting time."  We affirm.

The trial court has broad discretion in matters involving parenting rights and responsibilities.  In the Matter of Miller & Todd, 161 N.H. 630, 640 (2011).  Its overriding concern in such matters is the best interest of the child.  Id.

---

[1] Since this appeal was filed, the trial court has provided this court with orders addressing post-appeal motions that amend the final parenting plan, including an order issued on January 2, 2020 that amends the parenting plan, "pending further hearing," so as to grant the father parenting time "two out of three weekends," from Friday after school until Monday morning.  We note that neither party has argued that, in light of subsequent amendments to the parenting plan, this appeal is moot.  Accordingly, we will assume, without deciding, that the appeal is not moot.  We note further that the only parenting plan that is the subject of this appeal is the final parenting plan issued on April 18, 2019; we will not consider any post-appeal amendments to the final parenting plan in deciding this appeal.

RSA 461-A:6, I (Supp. 2019), codifies the best interest standard, setting forth several factors that the trial court is required to consider, including:

(a)    The relationship of the child with each parent and the ability of each parent to provide the child with nurture, love, affection, and guidance.

(b)    The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

(c)    The child's developmental needs and the ability of each parent to meet them, both in the present and in the future.

(d)    The quality of the child's adjustment to the child's school and community and the potential effect of any change.

(e)    The ability and disposition of each parent to foster a positive relationship and frequent and continuing physical, written, and telephonic contact with the other parent, including whether contact is likely to result in harm to the child or to a parent.

(f)    The support of each parent for the child's contact with the other parent as shown by allowing and promoting such contact, including whether contact is likely to result in harm to the child or to a parent.

(g)    The support of each parent for the child's relationship with the other parent, including whether contact is likely to result in harm to the child or to a parent.

(h)    The relationship of the child with any other person who may significantly affect the child.

(i)    The ability of the parents to communicate, cooperate with each other, and make joint decisions concerning the children, including whether contact is likely to result in harm to the child or to a parent.

. . .

(l)    The policy of the state regarding the determination of parental rights and responsibilities described in RSA 461-A:2.

(m)    Any other additional factors the court deems relevant.

RSA 461-A:6, I; see Miller & Todd, 161 N.H. at 640 (stating that trial court must consider factors under RSA 461-A:6, I, in determining best interest).  The "policy of the state regarding the determination of parental rights and responsibilities," RSA 461-A:6, I(l), includes "[s]upport[ing] frequent and continuing contact between each child and both parents," "encourag[ing] parents to share in the rights and responsibilities of raising their children," and "grant[ing] parents and courts the widest discretion in developing a parenting plan."  RSA 461-A:2, I(a), (b), & (d) (2018).

We have recognized "that a child's best interests are served when a trial court has broad discretion to consider all factors bearing on the child's welfare and is not compelled to treat any single factor as dispositive of the inquiry."  In re Name Change of Goudreau, 164 N.H. 335, 338 (2012).  Moreover, nothing in the statute, absent a party's request, obligates the trial court to issue express findings of fact relative to those factors.  See RSA 461-A:6, VII (Supp. 2019) (requiring trial court, "[a]t the request of an aggrieved party," to "set forth the reasons for its decision in a written order" (Emphasis added.)); cf. In the Matter of Kurowski & Kurowski, 161 N.H. 578, 598-99 (2011) (observing that the factors considered by the trial court in resolving a parenting dispute were consistent with the factors set forth in RSA 461-A:6, I).  Rather, we generally assume that the trial court made all subsidiary findings necessary to support its general ruling, including a finding that a parenting plan is in a child's best interest.  In the Matter of Kosek & Kosek, 151 N.H. 722, 725 (2005).

We will not overturn the trial court's ruling on a parenting petition absent an unsustainable exercise of discretion.  Miller & Todd, 161 N.H. at 630; see State v. Lambert, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).  This standard of review means that we review only whether the record establishes an objective basis sufficient to sustain the trial court's discretionary judgments, and will not disturb its determinations if they reasonably could have been made.  Miller & Todd, 161 N.H. at 640; Lambert, 147 N.H. at 296.  To establish that the trial court unsustainably exercised its discretion, the father must demonstrate that its rulings were clearly untenable or unreasonable to the prejudice of his case.  Lambert, 147 N.H. at 296.

In reviewing the trial court's discretionary rulings, we defer to its judgment on issues such as resolving conflicts in testimony, evaluating the credibility of witnesses, and determining the weight of the evidence presented.  In the Matter of Aube & Aube, 158 N.H. 459, 465 (2009).  The trial court is free to accept or reject, in whole or in part, the testimony of any witness, and is not required to believe even uncontested evidence.  Id. at 466.

The record establishes that the mother separated from the father in late 2016, and moved with the children approximately an hour away from the

3

father's home in Salem to her mother's residence in Marblehead, Massachusetts, where she has a support network. The move occurred around the time of the older child's third birthday, and when the younger child was approximately six months old. Since that time, the children have resided primarily with the mother in Marblehead, for the first year-and-a-half in their grandmother's home, and for the remaining time in a separate apartment that the mother rents for herself and the children.[2]

At the time of trial, the older child had been attending preschool in the Marblehead area for two years, and would be attending kindergarten in the fall. At the kindergarten where she would attend in Marblehead, the older child would be classmates with "a lot of friends" she had made in the community, including children with whom she had attended preschool. Additionally, the mother testified that both children were involved in other activities in the community, such as soccer, swimming lessons, and dance classes, that she takes the children to a nearby beach, and that the children love Marblehead. The guardian ad litem (GAL) described the area of Marblehead in which the children live as "a really nice area" that is walkable, "like an in-town, seaside kind of place," and described their Marblehead apartment as a "[c]lean, sanitary," and child-proofed three-bedroom apartment with sufficient "storage for personal items," "clothing," and age-appropriate toys. The GAL opined that the parties lived "too far apart . . . to have a shared parenting schedule when [the older child] enters kindergarten," and recommended that the children continue to reside primarily with the mother, and that the older child attend kindergarten in Marblehead. Both children, according to the GAL, were "doing very well."

According to the mother's testimony, she has significant flexibility in her employment as a freelance graphic designer that allows her to work primarily from home, and to schedule time in the office, when necessary, at times when the children are not in her care. The mother also testified that the children's maternal grandmother, who lives nearby, assists her in caring for the children, including when she has to go into the office for work. Despite the father's claims at trial and on appeal that the mother cannot afford to live in Marblehead, the evidence establishes that she had been living there with the children for almost two-and-a-half years at the time of trial, and had been renting a three-bedroom apartment there for approximately a year prior to trial.

---

[2] Throughout the case, the temporary parenting plan granted the mother primary residential responsibility. With respect to the father's parenting time, the temporary plan initially established a routine schedule under which he had parenting time every other weekend from Friday at 2 p.m. until Sunday at 7 p.m. (unless he could work from home on Friday, in which case his weekend parenting time would begin on Thursday afternoon), and every Wednesday from 5 p.m. until 7 p.m. After the father's employment changed in 2018, the temporary parenting plan was amended to provide him with parenting time every other weekend from Thursday at 8 a.m. until Monday at 8 a.m., and every week from Thursday at 8 a.m. until Friday at 5 p.m.

The evidence at trial additionally establishes that, throughout the case, the parties have had significant difficulty co-parenting. The mother described the father as exhibiting hostility and aggression toward her during exchanges in front of the children. During one particular exchange, the father slammed a door in the mother's face in front of the children, resulting in the local police being called to assist in the exchange and causing significant distress to the parties' older child.

At trial, the GAL testified on March 14, 2019, concerning her recommendation that the father have parenting time every Tuesday and Thursday from 2:00 p.m. until 7:00 p.m., and every other weekend from Thursday at 2:00 p.m. until Sunday at 7:00 p.m. Following the GAL's testimony, the presiding marital master made several observations, including that, because the parties live an hour apart, "a lot of midweek exchanges" with alternating weekends would become "unduly disruptive" to the children, particularly after they began school. The marital master then stated that he would "like to see Counsel" while "everybody else would just go out for a few minutes," and that "[w]e'll go off the record while I'll speak with them."

On the following hearing day, after the father had rested, the mother submitted an amended proposed parenting plan "based on the Court's comments at the last break, discussions with the GAL." She testified that she had amended her parenting plan to "reflect" "the last time we were in court," that she had "changed the Friday to Monday to Thursday to Sunday," and that, under her amended plan, the father "would have three weekends a month, from Thursday to Sunday." At the close of testimony on that day, the GAL also submitted an amended parenting plan, and the following discussion ensued:

> [GAL]: . . . [W]hen we had spoke[n] the last time we were here I changed the language in my parenting plan, so it was more clear. And then [the mother's attorney] left me a quick phone mail reminding me about what you discussed with us, with the three attorneys about the three weekends. So I added that in writing at the bottom.
>
> Just at the bottom I wrote – you can have this additional scheduling, as discussed with the Court at 3/14 hearing, Father every first, second, and third weekend each month, from Thursday at 2 until Sunday at 7. That was discussed –
>
> [Father's counsel]: Right.
>
> –between the three of us.
>
> [Father's counsel]: But if I'm clear that it's still –

[Father's counsel]: – every single Tuesday to Thursday, right?

[Mother's counsel]:  No.

[GAL]: Right, what I had testified to, correct.

[Father's counsel]:  But that's not the Court that spoke to us.

[GAL]:  Right. That's what the writing is (indiscernible).

[Father's counsel]:  That's what you've proposed.

THE COURT:  Whatever it says, it says.

[GAL]:  So I support – well, I would support both. I would support both, what the Court had suggested, and then what my original recommendation was, which was –

. . .

[GAL]: –  the Tuesdays and Thursdays.

At trial, the father advocated for a parenting plan that would have granted him residential responsibility during the week and every other weekend.  If the mother returned to Salem, he asserted that the parties could adopt an equal parenting schedule.  In rejecting this proposal, the trial court found that the children have adapted to Marblehead, that "[a] parenting [p]lan that is least disruptive to the children is in their best interests," that "given the approaching school issues, [the children] should remain in the Marblehead area," and that "it is in the best interests of the children to remain in the Marblehead, MA area."  The trial court additionally found that both parents love the children, "want what is best for them," and are "able to properly address the children's physical well-being," but that "[t]heir constant conflict and refusal to treat one another with civility are stumbling blocks to consistently meet the children's emotional and psychological needs—especially when one considers the children's observations of the exchanges in which the parties engage."  Thus, the trial court adopted a parenting plan that grants the father parenting time every two of three weekends from Thursday through Sunday during the school year and every other week during the summer, and grants the parties the right to phone or video-chat with the children twice per week.[3]  The trial court observed that this parenting plan "addresses [the

---

[3] Although the GAL had recommended a provision allowing a parent to video-chat or phone the children on a daily basis, there was evidence that the unavailability of the children to talk or video-chat during previously-scheduled times in the case had led to conflicts between the parties, including calls to the police and contempt motions.

father's] concern for frequent and consistent contact with the children," and that "[p]arents can maintain their relationships [with] their children with consistent contact, even if the schedule is not strictly equal."

On appeal, the father argues that "the overwhelming amount of the evidence . . . supported that the children should live primarily with [him] in Salem." In arguing that "Salem is the more appropriate place for the children to live," the father relies upon: (1) evidence concerning the size of his home in Salem and the fact that it is not encumbered by a mortgage; (2) testimony regarding the children's various activities and experiences in Salem; (3) his claims at trial, unsupported by any expert testimony or independent empirical evidence, that Salem has a lower cost of living and lower crime rate than Marblehead; (4) a single statement in an argument captured in a text-message exchange between the parties that he characterizes as the mother's "acknowledge[ment] [that] she cannot afford to live in Marblehead"; and (5) the fact that the mother's apartment is subject to a month-to-month lease. The trial court was free, however, to weigh the evidence, reject some, even uncontradicted evidence, and draw its own conclusions. Aube, 158 N.H. at 465-66.

The evidence at trial, including the testimony of both the mother and the GAL, supports the trial court's findings that both parents love the children and are able to provide for their needs, that the children have adapted to Marblehead, and that, because the older child was about to begin kindergarten, it was in the children's best interests to remain in Marblehead. Indeed, by the time of trial, the children had been residing primarily with the mother in Marblehead for almost two-and-a-half years, or for most of the younger child's life and nearly half of the older child's life. The older child had been attending preschool in the Marblehead area for two years with friends who would become her classmates in kindergarten. The GAL had opined that the children were "doing very well," and recommended that they continue to reside primarily with the mother in Marblehead and that the older child attend kindergarten in Marblehead.[4] Moreover, in light of the history of conflict between the parties witnessed by the children during exchanges, the trial court reasonably could have concluded that a parenting schedule that minimized exchanges was in the children's best interests.

To the extent that the father argues that the trial court "appears [to have] misunderstood the parties' temporary parenting plan which was in effect at the time of trial" because, in its narrative order, the court described the original temporary parenting plan, and not a subsequently-amended version of it, in

---

[4] We reject the father's argument that, merely because there was evidence that the children were not present when the GAL visited the mother's Marblehead apartment, the trial court erred as a matter of law by relying upon her testimony in finding that the children had adapted to Marblehead. See Aube, 158 N.H. at 465-66.

summarizing "the current routine schedule," we note that the father brought the discrepancy to the trial court's attention in a motion for reconsideration, and that the trial court, in denying the motion, indicated that it had reviewed it. Moreover, the father has not established how the error in describing "the current routine schedule" in the narrative order is prejudicial. Lambert, 147 N.H. at 296. Although he argues that, because there will be "an 11 day period each month without [the father] having parenting time," the parenting plan violates the public policy of "[s]upport[ing] frequent and continuing contact between each child and both parents," RSA 461-A:2, I(a), we note that the parenting plan grants the father three-day weekends with the children for two out of every three weekends during the school year, grants him equal parenting time during the summer months, and grants him the right to call or video chat with the children twice per week. Although the parents may not have equal parenting time under the parenting plan during the school year, we conclude that the parenting plan does, in fact, "support frequent and continuing contact between each child and" the father.

Upon this record, we cannot say that the parenting plan issued by the trial court was clearly untenable or unreasonable to the prejudice of the father's case. Lambert, 147 N.H. at 296.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**